PRISONER'S CIVIL RIGHTS COMPLAINT (Rev. 05/2015)

**FILED**

JUN - 6 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE __Western__ DISTRICT OF TEXAS
__San Antonio__ DIVISION

__Jeremy Daniel Eckert #2384937__
Plaintiff's Name and ID Number

__Pam Lychner Unit (TDC)__
Place of Confinement

SA22CA0597 OG

CASE NO._____
(Clerk will assign the number)

v.

__Aransas County__
Defendant's Name and Address

_____
Defendant's Name and Address

_____
Defendant's Name and Address
( DO NOT USE "ET AL.")

## INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1. To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2. Your complaint must be legibly handwritten, in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE.** ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3. You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4. When these forms are completed, mail the original and one copy to the clerk of the United States district court for the appropriate district of Texas in the division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. If you are confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), the list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate district court, the division and an address list of the divisional clerks.

## FILING FEE AND *IN FORMA PAUPERIS* (IFP)

1. In order for your complaint to be filed, it must be accompanied by the statutory filing fee of $350.00 plus an administrative fee of $50.00 for a total fee of **$400.00**.

2. If you do not have the necessary funds to pay the fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis*, setting forth information to establish your inability to prepay the fees and costs or give security therefor. You must also include a current six-month history of your inmate trust account. If you are an inmate in TDCJ-CID, you can acquire the application to proceed *in forma pauperis* and the certificate of inmate trust account, also known as *in forma pauperis* data sheet, from the law library at your prison unit.

3. The Prison Litigation Reform Act of 1995 (PLRA) provides "... if a prisoner brings a civil action or files an appeal *in forma pauperis,* the prisoner shall be required to pay the full amount of a filing fee." *See* 28 U.S.C. § 1915. Thus, the court is required to assess and, when funds exist, collect, the entire filing fee or an initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the court will apply 28 U.S.C. § 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from your inmate trust account, until the entire $350.00 statutory filing fee has been paid. (The $50.00 administrative fee does not apply to cases proceeding *in forma pauperis*.)

4. If you intend to seek *in forma pauperis* status, do not send your complaint without an application to proceed *in forma pauperis* and the certificate of inmate trust account. Complete all essential paperwork before submitting it to the court.

## CHANGE OF ADDRESS

It is your responsibility to inform the court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motion for any other relief. Failure to file a NOTICE TO THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

I. PREVIOUS LAWSUITS:
   A. Have you filed *any* other lawsuit in state or federal court relating to your imprisonment? ___YES  X NO
   B. If your answer to "A" is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)
      1. Approximate date of filing lawsuit:_____
      2. Parties to previous lawsuit:   N/A
         Plaintiff(s)_____
         Defendant(s)_____
      3. Court: (If federal, name the district; if state, name the county.)_____
      4. Cause number:_____
      5. Name of judge to whom case was assigned:_____
      6. Disposition: (Was the case dismissed, appealed, still pending?)_____
      7. Approximate date of disposition:_____

2

II. PLACE OF PRESENT CONFINEMENT: PAM lychner Unit (TDCJ)

III. EXHAUSTION OF GRIEVANCE PROCEDURES:
Have you exhausted all steps of the institutional grievance procedure?    X YES ___NO.
Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV. PARTIES TO THIS SUIT:
A. Name and address of plaintiff: Jeremy Daniel Eckert #2384937 PAM Lychner Unit / 2350 Atascocita Rd. Humble, Texas 77396

B. Full name of each defendant, his official position, his place of employment, and his full mailing address.

Defendant #1: Aransas County / 2840 HWY 35 N / Rockport, Texas 78382
Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Defendant #2: _____
Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Defendant #3: _____
Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Defendant #4: _____
Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Defendant #5: _____
Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

V. STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how each defendant is involved. You need not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

On January 17, 2021 Aransas County violated my 8th amendment of cruel and unusal punishment after I was brutally assaulted by police while infected with Covid during a class C misdemeanor fine only ticket: traffic stop.

VI. RELIEF:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

I am asking for 5 million dollars for my pain and suffering and mental anguish for me and my family

VII. GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.

Jeremy Daniel Eckert

B. List all TDCJ-CID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

2384937 (TDCJ #)

VIII. SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed? ___YES  X  NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

  1. Court that imposed sanctions (if federal, give the district and division):_____
  2. Case number: _____ N/A
  3. Approximate date sanctions were imposed:_____
  4. Have the sanctions been lifted or otherwise satisfied?          ___YES ___NO

4

C. Has any court ever warned or notified you that sanctions could be imposed?   ____YES  X  NO

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issued. (If more than one, use another piece of paper and answer the same questions.)

   1. Court that issued warning (if federal, give the district and division): _____
   2. Case number: _____ N/A
   3. Approximate date warning was issued: _____

Executed on: June 2, 2022
              DATE

_____Jeremy Eckert_____
_____Jeremy Eckert_____
(Signature of Plaintiff)

**PLAINTIFF'S DECLARATIONS**

1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.
2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.
3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.
4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.
5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this  2ND  day of  June , 20 22
            (Day)           (month)         (year)

_____Jeremy Eckert_____
_____Jeremy Eckert_____
(Signature of Plaintiff)

**WARNING: Plaintiff is advised any false or deliberately misleading information provided in response to the above questions may result in the imposition of sanctions. The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.**

June 2, 2022

On Jan. 17th, 2021, I was pulled over for speeding. It was at an area where the speed limit reduces from 60 to 45 mph upon entering town. It was late at night and I was reducing speed, however, I believe that I was being targeted because of the time I was out driving. I was not flicked until I was already a ways into town, and when I was flicked, the police were quite a distance away. Because of feeling targeted I waited to come to a complete stop until I found a well-lit area. Upon initial encounter, the officer scolded me for speeding ~~going about~~ but never indicated my actual speed, he seemed upset that I didn't pull over right away. He began his procedure of asking for my license, which I did not have a physical copy of and began to show him a picture of it on my phone. He wanted me to roll down my window and I informed him that I believed I had corona-virus and did not want to expose them. He told me to put my hands on the steering wheel to which I complied, showing him that I was not a threat. However, he began to ask me to step out of my vehicle, and I asked if I was being detained or arrested and if so, for what, no clear response was given, no Miranda rights were stated, no probable cause was given for me to comply with his request for me to exit my vehicle. Threats began to come from him that I would be forced out, windows would be smashed, etc, if I didn't

comply. I re-informed him that I had coronavirus and would not be getting out of my truck. Further action immediately took place where the police forced my door open and began trying to pull me out. I held on to my steering wheel the whole time and yelled to them that I had corona-virus. They then maced me with multiple cans of mace, so much that it affected them. There were several officers (around 5) at the scene at this point and the closest ones were coughing because of the mace they gassed me with. Things began to intensify and then everything went black. I was struck in the head with a police baton and knocked unconscious. When I came to, I was sitting on the street, from this moment, things were fuzzy. I had severe difficulty breathing and I was hurt. My body was aching badly and my head hurt. My ribs hurt, my elbows were messed up. I was cuffed. After seeing police video with my attorney, it was evidenced that police delivered severe blows as if retaliatory after they had knocked me out with the baton and dragged me onto the street. I was taken to Rockport ER and medically evaluated. There were noticeable cuts on my wrists from while I was handled that I still have scars from and pictures on my phone to prove that injury, as well as bruised ribs from the blow that was caught on a police body cam. While in the hospital I, at one moment was face down in a pillow with my hands cuffed behind

my back and I couldn't breathe. I freaked out and began hacking up phlem. Officers were standing in front of me and repositioned one on my side. I was tested for Covid, which resulted in a positive test. At some point in the hospital I was sedated, I came to consciousness, sitting in the lobby of the hospital and told I could go home. I looked at my shirt, which was bloody, looked at the cuts on my wrists from the cuffs, looked outside and saw that it was morning. No police were in sight, and I walked home. There was no speeding ticket issued, I was not taken to jail and nothing was no charges were brought against me until six months later, after I was in custody for a DWI charge I was brought in on Jan. 31, 2021. Just two weeks after the Jan 17th incident, when coincidentally, I had asked for video evidence, instead of signing a plea-bargain deal for 5 years of probation, on my court date in June, because of suspected entrapment that I wanted to prove for my defence when police approached my truck that was parked at a bar and they were sitting on sight, waiting for me to make a move, knowing I had been at the bar. On camera, as they approached me, they stated, "You don't want us to do what we did to you last time, do you?" As an intimidation tactic, in order for me to step out of my vehicle and go through their sobriety testing, to which I complied and was

subsequently arrested. After a month in custody at the Aransas County Detention Center, being held on, then, a DWI misdemeanor without legal representation, I filed a writ of Habeas Corpus and ironically my request for an attorney (submitted to officer Doane, then Cpl. Doane on Feb. 3, 2021) was filed (electronically recieved March 1, 2021) the day my Writ of Habeas Corpus was filed in the courts. An attorney, Diamond De Leon had contacted me that week, informing me he had been assigned to my case and we went to court for a hearing on March 7, 2021, when a PR bond was denied. The Writ of Habeas Corpus, however was "granted" and my $5000 bond had been reduced to $3000. Diamond was later dismissed, as my case was dismissed, then enhanced to a felony, based on prior convictions in Michigan that happened in 2008. I was assigned another attorney, Irma Sinjines, who on public record has been described as senile, by others she had represented in the past, and has been quoted as saying to one of her clients that she doesn't work for them, but that the court pays her. Her reputation followed her into my case when I didn't see her until my next court date on June 2021. An offer of 5 years probation had been placed on the table and she had asked me if I had received the piece of mail, an email sent to her of my offer, to which I replied that I hadn't, because I later found out it was mailed to another inmate she was representing! With this being our first meeting, and

me wanting to see video evidence proving entrapment and targeting, and police harassment, along with Officer David Gerloff's intimidation tactic, referencing the time on Jan 17th, when he boasted of using excessive force with Mace & the Baton, ~~in order to get me to comply to his requests~~, which by law, I had the right to remain in my vehicle, when at that moment, no criminal act had taken place, and with advanced warning of my health condition, knowing I had coronavirus & difficulty breathing, administered macey which increases difficulty and even can impede breath to the point of death, as in the case of Michael Solis, who died at the hands of officers who used this macing tactic, ironically in Aransas County. After repeatedly asking for video evidence, not only prior to my court date in June, but even in July (which, when I had declined the 5 year probation offer and asked for this video evidence, other charges were brought against me, reflecting the Jan 17th "traffic violation incident." Absurd charges such as Resisting arrest, a DWI (with no BAC level), and two harrassment on officers, accusing me of spitting on them, during an episode I had of hacking up phlem, probably due to the mace, as well as the coronavirus complications in my respiratory system.) Irma had met with me on the July date that court was cancelled and notified me of these additional charges, told me that the probation was off the table, and the DA was now offering three years

TDC, but that they would drop the additional charges if I signed. I told her that I now wanted to see the evidence packet involving these new charges. August court date approaches and I've still not seen video evidence of Jan 31st charges. Irma tries to convince me that I should sign on the 3 year TDC deal, to which I reluctantly do. Judge Flanigan rejects my plea when I mention that pending charges against me would not be pursued, including the Jan 17th "traffic violation incident" where I was brutally assaulted by police, then released from the hospital, uncuffed. I then ask for new counsel in August during Pre-trial conference, given Richard Zapata in September on the same day he was released as counsel for being ineffectual for another client he was court appointed to. And during the two months he was assigned to me I could not get in touch with him one time. So I filed a pro se Motion to withdrawal him as counsel. Was appointed Kelsey Downing who I didn't meet with until November during my trial date which at that point, the Aransas County DA said was ready to move forward on both cases. Kelsey Downing showed me the video evidence I had asked for, and even stated the police were out of line. She showed her husband, an officer, the video footage of the Jan 17th "encounter" with Rockport Police and he said they were way out of line. I was advised by her (who happened to be the ex DA of Aransas County) and she then said that DA wasn't going to

June 2, 2022

pursue the cases involving the Jan 17th encounter, and that they would try me on the Stanger case first, also stated that they would not allow for evidence from Jan 17th to be brought into Jan 31st charge, even though Officer David Gerlott referenced it. (The police brutality & excessive use of force). She advised me to forego the trial in order to get out of the "system" quicker and to cut my losses. So, I took her advice after being threatened to the malicious prosecution tactic which I believe was to pressure me into the consequences I am now facing and threats to make an appeal as well as file lawsuits against Aransas County from inside the TDCJ system. I signed a guilty plea to all charges in Nov. and forager trial. The Judge (weakly) ordered a PSI which held me in their county jail for another 3 months & (consequently), because I caught covid and had to miss Jan 19 sentencing date rescheduled for Feb 9. At hearing, DA brought in one officer to testify against me concerning Jan 17th, to which he blubbered a statement saying I had delerium, basically to persuade the Judge to discredit any accusations of brutality. Which he admitted, they used "brute force" against me and during cross examination, when asked about brute force, my attorney was silenced by the Judge and basically gagged when the Judge blurted, "none of (those details) matter, we already have a guilty plea on these charges and sentenced me to 5 years TDCJ.

[margin note: DA's motion to stack sentences told me the county jury was tried]

X _Jeremy Eckert_ signature

X _Jeremy Eckert_ print

Address:

Pam Lychner unit TDCJ #2384937
2350 Atascocita Dr.
Humble, TX 77396

Date: 6/2/2022